**Wylie G. SHOEMAKER, Petitioner,**

**v.**

**The ESTATE of Clyde WHISTLER et al., Respondents.**

**No. B–4391.**

Supreme Court of Texas.

July 10, 1974.

Rehearing Denied Sept. 24, 1974.

---

3. Under Rule 166–A(f), Texas Rules of Civil Procedure, Herring is entitled to pursue discovery measures.

Warren Burnett, Associated, Richard J. Clarkson and Timothy Ann Sloan, Odessa, for petitioner.

Cotton, Bledsoe, Tighe & Morrow, Charles L. Tighe, Midland, for respondents.

STEAKLEY, Justice.

The suit here is for damages for the death of the son of Petitioner, Wylie G. Shoemaker, who was killed in the crash of a single-engine four-passenger private airplane. The airplane was owned by Clyde Whistler, C. D. Carroll, Harvey Rogers, Barry Pendleton and Horace Fletcher. On July 13, 1968, two of the owners, Whistler and Carroll, accompanied by Jack Whis-

tler, the son of owner Whistler, and by Walter Shoemaker, the son of Wylie G. Shoemaker, were killed in the crash of the airplane while engaged in a voluntary Civil Air Patrol search mission. The search had no business or commercial purpose.

The airplane had taken off from the Dryden Airport near Sanderson, Texas, and the crash site was approximately six miles away. There was no direct evidence of the exact time of take-off, or of the circumstances of the departure, or of the weather conditions at the airport at the time. The circumstantial evidence, however, indicated that the airplane had taken off in the early morning under unfavorable weather conditions and that the crash occurred shortly thereafter. There was testimony that the early morning weather conditions at points approximately six to eight miles away was low ceiling and foggy. The evidence indicated that the airplane was found approximately thirty hours after the crash. The bodies of the four occupants were found outside the airplane at the crash site, and it could not be determined who was in the command pilot seat, or what seats were occupied by the others, either at the time of take-off or at the time of the crash.

The suit was initially filed against the surviving owners of the airplane and the estate of Clyde Whistler and his surviving widow, individually and as the qualified community survivor of the community estate. Prior to jury submission a nonsuit was taken as to all of the defendants except the estate of Clyde Whistler and Mrs. Clyde Whistler in the indicated capacities.

Upon trial, the jury found that the pilot of the airplane failed to exercise ordinary care in taking off when he did and that such failure was a proximate cause of the crash of the airplane; also, that immediately prior to the crash of the airplane it was flown into weather conditions which required an instrument-rated pilot for safe operation, and that such action was negligence proximately causing the crash. Carroll and Whistler were not instrument-rated pilots. There is no evidentiary attack upon the jury findings.

The trial court entered judgment against the estate of Clyde Whistler and against Mrs. Clyde Whistler, individually and as community survivor, in the sum of $35,000, the damages awarded Shoemaker by the jury, together with the sum of $1,200 burial expenses. Upon appeal, the Court of Civil Appeals reversed the judgment of the trial court and rendered judgment that Shoemaker take nothing. 502 S.W.2d 237.

As noted, Plaintiff-Petitioner Shoemaker seeks to impose liability only upon joint owner Whistler. There are three bases upon which such liability may be claimed to rest: that Whistler was in actual control of the airplane and hence was personally guilty of the negligent acts found by the jury; that whether or not he was in actual control of the airplane, Whistler is chargeable as an active participant in the negligence of taking off and of continuing the flight under the prevailing weather conditions in the sense that he knowingly acquiesced in the pilot's negligence and adopted it; and, finally, as sought to be invoked here, that the negligence found by the jury will be imputed to Whistler under the Texas doctrine of joint enterprise, whether or not he was in active command of the airplane or an active participant either at take-off or in flight prior to the crash.

We put aside the first possible basis for liability of Whistler since the parties agree that it cannot be determined which of the joint owners, Carroll or Whistler, was the command pilot of the airplane at the times in question; for purposes of decision, we assume that Whistler was not.

It is our further view that under the record here Whistler is not chargeable as a matter of law with the negligent acts found by the jury under a theory of active participation or knowing acquiescence in the ill-fated flight under the prevailing conditions. Nor can this follow from the jury finding that the pilot was negligent in

taking off when he did. As noted above, the evidence does not establish the time or circumstances of the take-off or the exact nature of the weather conditions at the airport at such time. No issue was requested or submitted to inquire whether the joint owners were negligent in the fact of taking off when they did; the finding was that the pilot was negligent in doing so. Nor can liability be imposed upon Whistler under the finding of the jury that immediately prior to the crash the airplane was flown into weather conditions which required an instrument-rated pilot for safe operation. Under the assumption we have been required to indulge, i. e., that Carroll and not Whistler was actually piloting the airplane at the times in question, Whistler could not have been expected to forcibly take the controls away from Carroll while in flight for the purpose of preventing the airplane from being flown into weather conditions requiring an instrument-rated pilot. For aught that appears from this record, such conditions may have developed after take-off and at a time when Whistler could not have been expected to take affirmative action, or would have had opportunity to do so.

So we reach the question of whether the negligence of the pilot-owner will be imputed to occupant-owner Whistler, and the solution of this requires an examination of the decisions that have formulated the Texas doctrine of joint enterprise. It is upon the basis of these decisions that Shoemaker asserts that Whistler was vicariously liable as a matter of law for the death of his son upon the theory that he was engaged in a common mission with his fellow owner, with each having the right of control of the airplane by reason of their joint ownership. Respondent Whistler, on the other hand, urges that the proper test for determining the right-of-control element is whether or not the person to whom negligence is being imputed has some position of superiority over the person who commits the negligent act, and this was the view of the intermediate court.

Whistler also strongly insists that our decision in Graham v. Franco, 488 S.W.2d 390 (Tex.1972), settled the issue here favorable to his position. But such was not the case. In the context of the community property defense, we there sustained the constitutionality of a statutory provision that a recovery for personal injuries would be the separate property of the injured spouse; and from this we further held that the acts of negligence of a husband were not imputed to the wife so as to bar her recovery for injuries to her person. Prior cases imputing the negligence of the husband to the wife, and thus denying her recovery for personal injuries, were based on the reasoning that the recovery would be community property and hence the husband would be benefiting from his own wrong. So it was logically concluded in *Franco* that the reason for the imputation of negligence based upon the community property defense falls where the recovery for the wife's injuries is her separate property. There was no showing or contention that the husband and wife in *Franco* were engaged in a joint enterprise calling for the imputation of the negligence of one to the other and our decision there does not rule the question here. *Cf.* Wilkinson v. Stevison, 500 S.W.2d 549 (Tex.Civ.App.1973, writ granted today) where the negligence of the husband was imputed to the wife-owner of the automobile in question under the doctrine of joint enterprise but where there was reserved the question of the rights of the parties had the automobile been jointly owned as community property.

The distinction between imputed negligence, or vicarious liability as often called, as sought to be applied here, and imputed contributory negligence, should also be noted. A recognized legal scholar in the field of torts has expressed the concepts in this manner:

"A is negligent, B is not. 'Imputed negligence' means that, by reason of some relation existing between A and B, the negligence of A is to be charged against B, although B has played no part in it,

has done nothing whatever to aid or encourage it, or indeed has done all that he possibly can to prevent it. The result may be that B, in an action against C for his own injuries, is barred from recovery because of A's negligence, to the same extent as if he had been negligent himself. This is commonly called 'imputed contributory negligence.' Or the result may be that B, in C's action against him, becomes liable as a defendant for C's injuries, on the basis of A's negligence. This is sometimes called imputed negligence. More often it is called vicarious liability, or the principle is given the Latin name of *respondeat superior.*" Prosser, Law of Torts, 4th ed., § 69, p. 458 (1971).

This same author further says of the doctrine of joint enterprise:

"Where the enterprise is for some commercial or business purpose, and particularly where the parties have agreed to share profits and losses, it usually is called a joint adventure. It is then governed, as to tort liability, by the law applicable to partnerships, which is beyond the limited scope of this text. The extension of 'joint enterprise' beyond such business ventures is almost entirely a creature of the American courts.

"Except in comparatively rare instances, its application has been in the field of automobile law, where it has meant that the negligence of the driver of the vehicle is to be imputed to a passenger riding in it. In relatively few cases, the passenger has been charged with liability as a defendant to a third person who has been injured by the negligence. [citing Straffus v. Barclay, 147 Tex. 600, 219 S.W.2d 65 (1949).] It is not altogether clear why this has not occurred more frequently, unless it is that, with a financially responsible defendant available in the negligent driver, the plaintiff has not thought it desirable to complicate matters by joining one who is personally in-

nocent. In by far the greater number of cases, the question has been one of contributory negligence, and the driver's misconduct has been imputed to the passenger to bar his own recovery. 'Joint enterprise' is thus of importance chiefly as a defendant's doctrine, imputing the negligence of another to the plaintiff . . . . " Prosser, Law of Torts, 4th ed., § 72, p. 476.

And as to imputed contributory negligence, this author concludes:

"Except for vestigial remnants which are at most moribund historical survivals, 'imputed contributory negligence' in its own right has now disappeared. The result at which the courts have arrived is that the plaintiff will never be barred from recovery by the negligence of a third person unless the relation between them is such that the plaintiff would be vicariously liable as a defendant to another who might be injured." § 74, p. 488.

■■ The established definition in this jurisdiction is that a joint enterprise exists where a driver and an occupant of a conveyance have not only a joint interest in the object and purpose of the enterprise, but also have an equal right to direct and control the conduct of each other in the operation of the conveyance. Bonney v. San Antonio Transit Co., 160 Tex. 11, 325 S.W.2d 117 (1959); El Paso Electric Co. v. Leeper, 60 S.W.2d 187 (Tex.Com.App. 1933); and *cf.* Robinson v. Ashner, 364 S.W.2d 223 (Tex.1963). A distinction is drawn between the right of control and the actual power or physical capacity to control. The latter may be lacking without affecting the question. Keeton, Imputed Contributory Negligence, 13 Tex. L.Rev. 161, 165 (1935). The theory of joint enterprise is to make each party thereto the agent of the other and thereby to hold each responsible for the negligent act of the other. Straffus v. Barclay, 147 Tex. 600, 219 S.W.2d 65 (1949). Each joint enterpriser must have *some* voice and

right to be heard in its control and management. Nelson v. Fulkerson, 155 Tex. 298, 286 S.W.2d 129 (1956). The Restatement 2d of Torts (1965) § 491 speaks of this essential element in terms of an equal right to a voice in the direction of the enterprise.

■ We have not limited the doctrine of joint enterprise to those having a commercial or business purpose; see *Bonney* (vacation trip) and *Leeper* (traveling to a dance). Nor have we drawn any distinction in applying the doctrine between the imputation of contributory negligence and vicarious liability based on imputed negligence. *Bonney* and *Leeper* imputed contributory negligence; *Straffus* imposed vicarious liability. Indeed, it was said in *Straffus*:

"Since the theory of joint enterprise is to make each party thereto the agent of the other and thereby to hold each responsible for the negligent acts of the other, it may have the effect of making a passenger liable to a third person not a party to the enterprise as well as barring his recovery against a third person on the ground of contributory negligence. Howard v. Zimmerman, 120 Kan. 77, 242 P. 131; Cresent Motor Co. v. Stone, 211 Ala. 516, 101 So. 49; Lucey v. John Hope & Sons Engraving & Mfg. Co., 45 R.I. 103, 120 A. 62; Ahlstedt v. Smith, 130 Neb. 372, 264 Mo. [sic] 889. The contributory negligence type of case is therefore in point here. In El Paso Electric Co. v. Leeper, Tex.Com.App., 60 S.W.2d 187, which has been cited with evident approval by this court (see Ford Motor Co. v. Maddin, 124 Tex. 131, 76 S.W.2d 474, 476; Rankin v. Nash-Texas Co. [129 Tex. 396, 105 S.W.2d 195], supra), a joint enterprise was held to exist as a matter of law as between the young lady plaintiff and her escort, who was driving her and himself in a car belonging to the young lady's mother, who in turn had let the couple use it to go to a dance." 219 S.W.2d at 68.

The precise question of whether joint owners of a conveyance will be held vicariously liable under the doctrine of joint enterprise has not been decided in this State. Cited as closely in point are Straffus v. Barclay and El Paso Electric Co. v. Leeper, *supra*. It is emphasized that *Straffus* quotes with approval the holding in *Leeper* that "the additional requirement as to joint right of control of the car's operation [was] satisfied by the fact the plaintiff's mother had 'loaned the car to her and to her escort.'" So it is urged that a logical distinction may not be drawn, insofar as the question at hand is concerned, between the concept of equality of control of joint borrowers and that of joint owners. As to the former, *Straffus* recognizes with approval that in *Leeper* "the court holds the enterprise to exist where there is 'not only a joint interest in the object and purpose of the enterprise, but also an equal right, express or implied, to direct and control the conduct of each other in the operation of the conveyance.'"

■ As stated above, the equal right of control element has been articulated to mean that each must have an authoritative voice or, as said in Nelson v. Fulkerson, *supra,* must have *some* voice and right to be heard. We agree that it is not realistic to say that joint owners of a conveyance do not enjoy this right, absent a showing of relinquishment either by overt act or by reasonable inferences from the circumstances. *Cf.* Johnston Testers, Inc. v. Taylor, 309 S.W.2d 117 (Tex.Civ.App.1958, ref'd n. r. e.). There is no showing of overt relinquishment here and an inference that such occurred does not arise from the fact that one owner, or another, was in the command pilot seat on the occasion in question, and thus in actual charge of the operation of the airplane. No more than one person—whether owner or non-owner pilot or driver—can be in superior command of an airplane or driving an automobile at the same time. But this does not gainsay the authority, and the right to be heard, that is inherent in the joint owner-

ship of the passenger owner. The practical fact that a passenger or one in subordinate command is not expected to wrest the controls of an airplane from the pilot while flying through the air or, for that matter, to wrest the steering wheel of an automobile while speeding down the highway, is present to the same extent in the circumstances of joint ownership as in the circumstance of a non-owner pilot or driver and the passenger-owner situation. Yet in this latter situation we have observed in imposing vicarious liability that the owner-passenger had the right to exercise control, and we have imputed the negligence of the driver to the owner. Straffus v. Barclay, *supra*. It may well be that the right of control of joint owners is less authoritative each to the other than in the case of the non-owner driver and owner-passenger; but it is nonetheless equal between joint owners in their respective rights to a voice in the operation of their jointly owned property. It is our further view that this firmly established concept of equal right of control precludes the test advocated by Respondent Whistler, and embraced by the intermediate court, that the person to whom negligence is imputed must occupy a position of superiority and thus have an overriding authority over the person who commits the negligent act. Indeed, not only is this test foreign to our writings but we have not found it to be recognized in any decision to which we have been cited nor considered in the writings of legal scholars on this subject.

It became apparent, then, that the prior writings of this Court formulating the doctrine of joint enterprise compel the conclusion that the negligence of pilot Carroll is to be imputed to joint owner Whistler, thus establishing the vicarious liability of Whistler. Indeed, the facts now before us fall well within the elements of joint enterprise articulated by this Court, i. e., a joint interest in the object and purpose of the enterprise and an equal right to direct and control the conduct of each other in the operation of the conveyance. *Leeper, supra, Bonney, supra*. We have considered a broad range of activities by fellow travelers as fulfilling the joint purpose requirement; driving to work (*Nelson*), going to church and to buy groceries (*Straffus*), and even driving to a masquerade dance (*Leeper*), are activities that have been held to constitute a joint purpose in terms of joint enterprise. However, the case at hand calls for an initial consideration by this Court of the doctrine of joint enterprise in the joint owner context and this in turn has led to its reconsideration, and to modification of the doctrine to the extent later stated.

By way of history, we know that the law of partnership and the principles of agency serve as a foundation for the doctrine of joint enterprise. A step away from partnership is joint venture, a concept that is generally more limited in time and in purpose than a partnership. While a joint venture encompasses fewer objectives than a partnership, both exist in a business or commercial setting. Joint enterprise, which may be considered a third stage of development, is an unique creation of American jurisprudence. American courts have applied this doctrine almost solely in the field of automobile law; in interpreting joint enterprise, some courts have retained the business character of joint venture as a requirement, while others have manifested a broader view of the doctrine. The pecuniary interest requirement has been most often imposed in the context of imputed contributory negligence and it has been said that this is the direction toward which the courts are tending to move. Prosser, The Law of Torts § 72 (4th ed. 1964).

A codification of the business or commercial characterization of joint enterprise is set forth in The Restatement 2d of Torts § 491 (1965) where it is stated at comment c: "The elements which are essential to a joint enterprise are commonly stated to be four: (1) an agreement, express or implied, among the members of the group; (2) a common purpose to be carried out by the group; (3) a com-

munity of pecuniary interest in that purpose, among the members; and (4) an equal right to a voice in the direction of the enterprise, which gives an equal right of control. Whether these elements exist is frequently a question for the jury, under proper direction from the court." While several courts have embraced the "community of pecuniary interest" element set forth in the Restatement, Adams v. Treat, 427 P.2d 270 (Or.1970); Huff v. Rosenberg, 496 S.W.2d 352 (Ky.Ct.App.1973); Sumner v. Amacher, 437 P.2d 630 (Mont. 1968), others have articulated this element in terms such as a "common business purpose," a "common financial interest," a "common pecuniary objective," or a "venture for profit in a financial or commercial sense." Babington v. Bogdanovic, 7 Ill. App.3d 593, 288 N.E.2d 40 (1972); Bridgewater v. Wagoner, 28 Ill.App.2d 201, 170 N.E.2d 785 (Ill.App.Ct.1960); Stam v. Cannon, 176 N.W.2d 794 (Iowa 1970); Kuzel v. State Farm Mutual Automobile Ins. Co., 20 Wis.2d 558, 123 N.W.2d 470 (1963). The courts that have restricted joint enterprise to the business or commercial context have perceived inequities in application of the broader joint enterprise doctrine. *See* Sumner v. Amacher, *supra*; and *cf.* Sherman v. Korff, 353 Mich. 387, 91 N.W.2d 485 (1958). Indeed, there is not the same reason for imposing liability in the non-commercial situations which are more often matters of friendly or family cooperation and accommodation. Prosser, *supra,* § 72 at 481.

While the broader definition of joint enterprise has been previously embraced by this Court, *Leeper, Straffus, Nelson, Bonney,* we have determined that the definition set forth in the Restatement § 491, comment c is better reasoned and is adopted. By limiting the application of the doctrine to an enterprise having a business or pecuniary purpose, we will henceforth be avoiding the imposition of a basically commercial concept upon relationships not having this characteristic. *See* Prosser, § 72; Stam v. Cannon, *supra*; Sumner v.

Amacher, *supra*; and Wanda Petroleum Co. v. Hahn, 489 S.W.2d 428 (Tex.Civ. App.—Corpus Christi 1973, writ ref'd n. r. e.). Under this rule the elements of joint interest in the purposes of the enterprise and an equal right of control of the conveyance being used to further the enterprise will not be sufficient to impose vicarious liability or to impute contributory negligence.

As we have stated, the death of the son of Petitioner—Shoemaker occurred in the crash of the airplane while engaged in a voluntary Civil Air Patrol search mission. The two joint owners in the airplane at the time had no pecuniary interest in the common purpose of the search and the negligence of the pilot-owner may not be imputed to the passenger-owner Whistler so as to render him vicariously liable. The judgment of the Court of Civil Appeals is therefore affirmed.