COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-03-127-CV
  
  
SEAWAY 
PRODUCTS PIPELINE COMPANY                               APPELLANT
  
V.
  
DOYLE 
HANLEY, TOM CHAMBERS, ALEDO                               APPELLEES
CONSTRUCTION, 
INC., ANNETTA
DEVELOPMENT 
CORPORATION, AND
RICHARD 
A. BLOOMFIELD, SR.
  
------------
 
FROM 
THE 67TH DISTRICT COURT OF TARRANT COUNTY
 
------------
 
OPINION
 
-------------
INTRODUCTION
        Appellant 
Seaway Products Pipeline Company (“Seaway”) claims the trial court erred in 
granting summary judgment in favor of appellees Doyle Hanley (“Hanley”), Tom 
Chambers (“Chambers”), Aledo Construction, Inc. (“Aledo”), Annetta 
Development Corporation (“Annetta”), and Richard A. Bloomfield, Sr. 
(“Bloomfield, Sr.”) on causes of action arising from the rupture of a 
pressurized gasoline pipeline during the development of a lot in a residential 
subdivision.  We affirm.
FACTUAL AND PROCEDURAL BACKGROUND
        In 
the late 1980s Chambers became the owner of the property which is the subject of 
this suit.  He later formed Annetta on April 9, 1997, and deeded the 
property to Annetta.  The following month Annetta, as owner of the land, 
entered into a Development Agreement with Aledo, which was identified in the 
agreement as the developer, whereby the property would be laid out and sold to 
homebuilders.[1]  On April 22, 1998, Sean Knight 
Custom Homes, Inc. (“Custom Homes”) entered into a contract with Annetta to 
purchase lot 26 of phase 7 of the property, and on June 15 of that year a 
warranty deed to Knight from Annetta was executed. Knight then conveyed the lot 
to Rick Bloomfield, who subsequently transferred the lot on November 17, 1998 to 
his father, Richard E. Bloomfield, Sr., who owned the lot in question at the 
time the incident that is the subject of this lawsuit occurred.
        On 
April 5, 1999, Melvin Walcott (“Walcott”) ruptured Seaway’s pipeline with 
a backhoe tractor while working on the subdivided lot owned by Bloomfield, Sr.[2]  A week prior to the accident, Bloomfield, Sr. was to 
close on the sale of the lot to prospective homeowners, the McWeeneys, but due 
to problems encountered by the McWeeneys, the closing had to be 
rescheduled.  Also prior to the rescheduled closing, the McWeeneys hired 
Sean Knight (“Knight”), Bloomfield, Sr.’s son-in-law and owner of Custom 
Homes, to build a house on the lot.  While Bloomfield, Sr. was out of the 
country on business, Walcott, who had been hired by Knight, began clearing the 
lot in preparation of construction.  Although Bloomfield, Sr. left a power 
of attorney with his son Rick Bloomfield to enable him to close on the lot in 
his father’s absence, the accident occurred before the sale could take place.
        As 
a result of the rupture, adjoining lot owners Tim and Ashley McAuliffe 
(“McAuliffes”) brought various claims against Seaway, ARCO, Knight, Custom 
Homes, Walcott, and those they asserted were involved in the development of the 
subdivision and sale of the lot: Hanley, Aledo, Chambers, and Annetta. Seaway 
asserted cross-claims against the existing defendants (except ARCO), added third 
party defendants, including Bloomfield, Sr., and settled with the 
McAuliffes.  The claims between the McAuliffes and all other parties were 
severed, leaving only Seaway’s cross-claims and third-party claims in this 
cause.
        Seaway 
asserted that Hanley, Aledo, Chambers, and Annetta were liable for negligence 
and gross negligence in (1) platting the lot so that the pipeline was situated 
in the front of the lot, (2) mislocating the pipeline easement on the recorded 
plat of the subdivision, (3) publicizing a sales map without reference to or 
otherwise indicating the existence of the pipeline, and (4) failing to warn 
others of the existence, location, and depth of the pipeline.  Seaway 
claimed that Knight and Walcott were Bloomfield, Sr.’s agents, and that 
Bloomfield, Sr. and Knight were engaged in a joint enterprise with regard to the 
development and sale of the lot. Seaway also claimed that Bloomfield, Sr., 
directly and through Knight and Walcott, was (1) negligent; (2) negligent per se 
for failing to notify Seaway that excavation was to be conducted on the lot, as 
required by section 251.151 of the Texas Utilities Code[3]; 
and (3) liable for Seaway’s reasonable and necessary cost of removal, remedial 
action, and other costs pursuant to section 361.344(a) of the Texas Health and 
Safety Code.[4]  See Tex. Health & Safety Code Ann. § 
361.344(a) (Vernon 2001).
        Hanley 
and Bloomfield, Sr. filed individual no-evidence motions for summary judgment, 
Aledo filed a motion combining traditional and no-evidence grounds, and Chambers 
and Annetta (“Chambers/Annetta”) filed a joint motion also combining 
traditional and no-evidence grounds.  In response to Seaway’s answer, 
Hanley filed detailed objections directed to each of the exhibits Seaway offered 
as summary judgment evidence.  Likewise, Bloomfield, Sr. objected to the 
affidavit of Kathy Berry, a former ARCO employee, and the “Background” 
section in Seaway’s summary judgment response, claiming it made factual 
statements that were unsupported by the evidence.
        The 
trial court (1) granted each of appellees’ motions for summary judgment; (2) 
sustained, in some part, each of Hanley’s objections to the summary judgment 
evidence offered by Seaway; (3) sustained Bloomfield’s objections to Berry’s 
affidavit and the “Background” section of Seaway’s response; (4) severed 
Seaway’s claims against the other defendants, including Knight, Sean Knight 
Custom Homes, and Walcott, who did not obtain summary judgment; and (5) entered 
a final take-nothing judgment in favor of appellees.  In two issues, Seaway 
claims the trial court erred in granting appellees’ motions for summary 
judgment and in striking Berry’s affidavit.[5]
STANDARD OF REVIEW FOR NO-EVIDENCE MOTION
        After 
an adequate time for discovery, the party without the burden of proof may, 
without presenting evidence, move for summary judgment on the ground that there 
is no evidence to support an essential element of the nonmovant's claim or 
defense.  Tex. R. Civ. P. 
166a(i).  The motion must specifically state the elements for which there 
is no evidence.  Id.; Johnson v. Brewer & Pritchard, P.C., 73 
S.W.3d 193, 207 (Tex. 2002).  The purpose of the rule requiring specificity 
in a motion for summary judgment is to provide the opposing party with adequate 
information for opposing the motion and to define the issues.  Dear v. 
City of Irving, 902 S.W.2d 731, 734 (Tex. App.—Austin 1995, writ 
denied).  The specificity requirement is satisfied if the grounds in the 
motion give “fair notice” to the nonmovant. Roth v. FFP Operating 
Partners, L.P., 994 S.W.2d 190, 194 (Tex. App.—Amarillo 1999, pet. 
denied).  The trial court must grant the motion unless the nonmovant 
produces summary judgment evidence that raises a genuine issue of material 
fact.  See Tex. R. Civ. P. 
166a(i) & cmt.; S.W. Elec. Power Co. v. Grant, 73 S.W.3d 211, 215 
(Tex. 2002).
        We 
review the evidence in the light most favorable to the party against whom the 
no-evidence summary judgment was rendered.  Johnson, 73 S.W.3d at 
197; Morgan v. Anthony, 27 S.W.3d 928, 929 (Tex. 2000).  If the 
nonmovant brings forward more than a scintilla of probative evidence that raises 
a genuine issue of material fact, then a no-evidence summary judgment is not 
proper.  Moore v. K Mart Corp., 981 S.W.2d 266, 269 (Tex. App.—San 
Antonio 1998, pet. denied).
HANLEY’S SUMMARY JUDGMENT MOTION
        Seaway 
challenges the form of Hanley’s no-evidence motion for summary judgment.  
Specifically, Seaway claims that Hanley’s motion did not require it to produce 
summary judgment evidence as to any element of negligence because Hanley’s 
motion only “challenged negligence generally and did not specifically state 
the elements for which there is no evidence,” and to the extent Hanley’s 
motion challenged specific facts or the evidentiary components of an element, it 
was also deficient.
        Indisputably, 
the common law doctrine of negligence consists of three elements: (1) a legal 
duty owed by one person to another; (2) a breach of that duty; and (3) damages 
proximately resulting from the breach.  Foster v. Denton Indep. Sch. 
Dist., 73 S.W.3d 454, 465 (Tex. App.—Fort Worth 2002, no pet.).  
Here, Hanley’s motion for summary judgment states, in part, that there is no 
evidence of legal duty or proximate cause.  Therefore, Hanley’s motion 
was proper and required Seaway to produce summary judgment evidence that raised 
a genuine issue of material fact as to the elements of duty and proximate cause. 
 Tex. R. Civ. P. 166a(I); Grant, 
73 S.W.3d at 215.
        While 
Seaway presented summary judgment evidence below, the trial court sustained 
Hanley’s objections to that evidence.  Therefore, before discussing 
whether it produced more than a scintilla of probative summary judgment 
evidence, Seaway had to explain why the trial court erred in striking its 
evidence.  However, Seaway failed to discuss the trial court’s order in 
its brief.  Therefore, because Seaway failed to challenge the trial 
court’s order, Seaway is left with no evidence on appeal that would raise a 
genuine issue of material fact regarding its claims against Hanley.  See 
Tex. R. App. P. 38.1(e) (“The 
brief must state concisely all issues or points presented for review.”).
        Belatedly, 
Seaway argues in its reply brief that Rule 38.1(e) of the Texas Rules of 
Appellate Procedure mandates that its challenge to the trial court’s grant of 
summary judgment be treated as a challenge to the trial court’s separate order 
striking Seaway’s summary judgment evidence, and thus it did not need to raise 
a separate issue regarding the trial court’s order striking its summary 
judgment evidence.  See id. (stating an appellate issue 
“will be treated as covering every subsidiary question that is fairly 
included”).  Seaway, however, cites no case law supporting this 
proposition.  Moreover, Seaway’s second issue on appeal is contrary to 
this proposition.  In its second issue, Seaway does raise a separate 
argument regarding the trial court’s exclusion of one of Seaway’s affidavits 
that was offered as summary judgment evidence against Bloomfield, Sr., unlike 
its contentions regarding the summary judgment it offered against Hanley.  
Finally, for the first time on appeal, Seaway attempts to complain of the trial 
court’s order in its reply brief, but it furnishes no authorities in support 
of its contentions.  Under this state of the record, we will not consider 
these matters on appeal. See Tex. 
R. App. P. 38.1(e), (h); Triad Home Renovators, Inc. v. Dickey, 15 
S.W.3d 142, 146 (Tex. App.—Houston [14th Dist.] 2000, no pet.).  
Accordingly, in regard to Hanley’s no-evidence summary judgment, we overrule 
Seaway’s first issue.
BLOOMFIELD’S SUMMARY JUDGMENT MOTION
        As 
with Hanley, Seaway challenges the form of Bloomfield’s no-evidence motion 
arguing that Bloomfield, Sr. did not specify which elements of Seaway’s 
negligence, negligence per se, and Texas Solid Waste Disposal Act (“SWDA”)[6] claims lacked evidentiary support.[7]  
However, a simple reading of Bloomfield, Sr.’s motion for summary judgment 
shows that he asserted that there was no evidence that (1) he had a duty or that 
he breached his duty as a landowner; (2) he breached a duty imposed on him by 
statute; or (3) he was subject to the SWDA because he does not fit the 
definition of a “person responsible for solid waste” under the SWDA.  
Therefore, in regard to Seaway’s negligence claims, Bloomfield, Sr.’s motion 
required Seaway to produce summary judgment evidence that raised a general issue 
of material fact as to duty and breach.[8]  See 
Tex. R. Civ. P. 166a(i).  In 
regard to Seaway’s claim of negligence per se under section 251.1251 of the 
Texas Utilities Code,[9] Seaway was required to 
produce summary judgment evidence that raised a general issue of material fact 
as to Bloomfield, Sr.’s breach of the duty.  See id.  
Finally, in regard to Seaway’s claim under the SWDA, Seaway was required to 
produce summary judgment evidence that raised a genuine issue of material fact 
regarding whether Bloomfield, Sr. is a person responsible for solid waste under 
the SWDA.  See id.
I. NEGLIGENCE
        Regarding 
its negligence claims, Seaway asserted that a genuine issue of material fact 
exists as to whether Bloomfield, Sr., directly and through Knight and Walcott, 
breached the following duties: (1) exercising ordinary reasonable care in 
attempting to develop the lot; (2) making reasonable efforts to investigate and 
determine the existence, location, and depth of the pipeline on the lot in order 
to ensure that it was not disturbed during development of the lot; (3) notifying 
all persons who were going to perform development and construction activities on 
the lot of the existence, location, and depth of the pipeline; (4) providing 
proper and adequate supervision of Walcott during development activities on the 
lot; and (5) using ordinary care to keep the lot in a safe condition.
        Seaway 
failed to present any summary judgment evidence showing that Bloomfield, Sr. 
authorized or was even aware of Knight’s and Walcott’s development of the 
lot.  Therefore, all of Bloomfield, Sr.’s alleged breaches of duty, 
except Bloomfield, Sr.’s duty to use ordinary care in keeping the lot in a 
safe condition, hinge on Bloomfield, Sr.’s negligence through Knight and 
Walcott during the development of the lot.  Accordingly, we will first 
address whether Seaway presented some probative summary judgment evidence that 
raised a genuine issue of material fact as to whether Bloomfield, Sr.’s 
relationship with Knight or Walcott created a duty that he breached during the 
development of the lot.  Then, we will turn to Bloomfield, Sr.’s direct 
liability and determine if Seaway presented some probative summary judgment 
evidence that raised a genuine issue of material fact that Bloomfield, Sr. 
breached his duty to use ordinary care to keep the lot safe.
A. Bloomfield’s Relationship with Knight and Walcott
        Seaway 
contends that Bloomfield, Sr. was engaged in a joint enterprise with Knight to 
develop and sell the lot and therefore was liable for Knight’s negligent acts 
committed in developing the lot, including exercising reasonable control over 
Walcott.[10]  Under Texas law, a joint 
enterprise signifies a legal relationship between two or more parties that 
imposes the responsibility upon each party for the negligent acts of the others 
while acting in furtherance of their common undertaking.  See Shoemaker 
v. Estate of Whistler, 513 S.W.2d 10, 14 (Tex. 1974).  A joint 
enterprise is established when the parties involved have (1) an agreement, 
expressed or implied, among the members of the group; (2) a common purpose to be 
carried out by the group; (3) a community of pecuniary interest in that common 
purpose; and (4) an equal right to direct and control the enterprise.  Id. 
at 15-17; Blackburn v. Columbia Med. Ctr. of Arlington Subsidiary, L.P., 
58 S.W.3d 263, 272 (Tex. App.—Fort Worth 2001, pet. denied).
        While 
Seaway’s response correctly lays out the elements required to establish a 
joint enterprise, it fails to adequately connect the summary judgment evidence 
it presented to the specific elements.  Instead, Seaway generally asserts 
that “[it] presented sufficient summary judgment evidence establishing that 
Bloomfield[, Sr.] engaged in a joint enterprise with Knight and Knight Custom 
Homes in order to develop and sell [the lot].”  Specifically, Seaway 
argues that the evidence indicates that Bloomfield, Sr. and Knight were offering 
the lot and Knight’s building services in one package.
1. Deposition Testimony
        To 
support its joint enterprise theory, Seaway points to the deposition testimony 
of Bloomfield, Sr., Knight, Tim McAuliffe, an adjoining landowner, and Shelia 
Mitchell, an employee of ARCO.[11]  Their 
deposition testimony shows the following: (1) Bloomfield, Sr. purchased the lot 
on November 17, 1998; (2) Bloomfield, Sr. let Knight know that lot was 
available, that he wanted $42,000, and he’d sell it to anybody that had 
$42,000; (3) Bloomfield, Sr. asked Knight, and no one else, to try to find a 
buyer because Knight worked in that general area and he had the greatest 
potential of running across somebody that might buy the lot; (4) McAulifee saw a 
Knight Custom Home sign on the lot beginning in October or November of 1998; (5) 
Bloomfield, Sr. had been to the lot six or seven times before the rupture; (6) 
Knight told Bloomfield, Sr. that he had found buyers (the McWeeneys) that were 
willing to pay Bloomfield, Sr.’s asking price; (7) the only contact 
Bloomfield, Sr. had with the McWeeneys was through Knight’s office; (8) 
Bloomfield, Sr. still owned the lot when the McWeeneys hired Knight to build a 
house on the lot a week or two before the rupture on April 5, 1999; and (9) 
after the rupture, Bloomfield, Sr. asked Mitchell how long it would take for the 
property to be cleaned up and said something about wanting to build on the lot, 
which made Mitchell assume that he personally wanted to build on the lot.
        Because 
we find it dispositive, we focus our analysis on whether the parties in this 
case had a community of pecuniary interest. In determining whether evidence of a 
community of pecuniary interest exists, the Texas Supreme Court has “focused 
upon evidence showing pooling of efforts and monetary resources between entities 
to achieve common purpose, namely reduction in costs and contemplation of 
economic gain by approaching the project as a joint undertaking.”  Blackburn, 
58 S.W.3d at 276 (citing Tex. Dep’t of Transp. v. Able, 35 S.W.3d 608, 
614 (Tex. 2000)).  Here, there was no evidence of a sharing of resources, 
pooling of funds, monetary investment, costs or benefits between Bloomfield, Sr. 
and Knight.  Instead, the evidence shows “[n]othing more than limited 
evidence of mere convenience to the parties arising from the arrangement and a 
shared general business interest,” which is insufficient to establish a joint 
enterprise.  Id. at 277.  Therefore, Seaway failed to present 
evidence to raise a genuine issue of material fact that Bloomfield, Sr. was 
engaged in a joint enterprise with Knight to develop and sell the lot.  
Accordingly, Bloomfield, Sr. cannot be held liable under a joint enterprise 
theory for Knight’s or Walcott’s negligent acts.
2. Berry’s Affidavit
        In 
its second issue, Seaway claims the trial court erred by striking Berry’s 
affidavit, which Seaway offered as summary judgment evidence of agency and joint 
enterprise between Bloomfield, Sr. and Knight.  The affidavit reads in 
relevant part:
 
Shortly after the pipeline rupture occurred, I traveled to Parker County, Texas 
to review the pipeline rupture events and assist with various site 
investigations and clean-up activities.  After the incident occurred, I 
received a telephone call from [Bloomfield, Sr.].  [Bloomfield, Sr.] was 
calling to get information about the pipeline rupture and clean-up activities 
and explained he had been out of the country at the time the pipeline had been 
ruptured.  During the conversation, [Bloomfield, Sr.] specifically asked me 
when the clean-up activities would be completed because he was anxious to have 
construction resumed at the property.  [Bloomfield, Sr.] indicated he was 
involved, with his son-in-law, Sean Knight, in the development of this property.

Bloomfield, 
Sr. objected to the affidavit, arguing that it was based on conclusory 
statements by an interested party which were unsubstantiated and contained 
Berry’s opinions and subjective beliefs.  Specifically, Bloomfield, Sr. 
argued that Berry’s affidavit did not state what Bloomfield, Sr. did to 
“indicate” that he and Knight were involved in the development of the 
lot.  Additionally, Bloomfield, Sr. complained that the affidavit was 
produced approximately one year and four months after Seaway’s third-party 
petition was filed and after the conclusion of the discovery period in this 
case.  The trial court sustained Bloomfield, Sr.’s objections and struck 
the affidavit.
        We 
review a trial court’s rulings in admitting or excluding evidence under an 
abuse of discretion standard.  Nat’l Liab. & Fire Ins. Co. v. 
Allen, 15 S.W.3d 525, 527 (Tex. 2000).  An appellate court must uphold 
the trial court’s evidentiary ruling if there is any legitimate basis in the 
record for the ruling. Owens-Corning Fiberglass Corp. v. Malone, 972 
S.W.2d 35, 43 (Tex. 1998).  To be competent summary judgment evidence, an 
affidavit must be based on personal knowledge, set forth facts admissible in 
evidence, and affirmatively show the affiant’s competency to testify as to the 
matters stated therein.  Tex. R. Civ. 
P. 166a(f).  Texas case law holds that unsupported conclusory 
statements are not credible and are not susceptible to being readily 
controverted, and as a result are not proper summary judgment evidence.  Rizkallah 
v. Conner, 952 S.W.2d 580, 587 (Tex. App.—Houston [1st Dist.] 1997, no 
writ).
        Berry’s 
affidavit is such a statement.  Whereas a sentence in the affidavit 
explains that Bloomfield, Sr. “specifically asked” a question related to the 
clean-up of the lot, nothing in the following sentence sets forth the facts to 
support what Bloomfield, Sr. did to “indicate” that he was involved with 
Knight in developing the property. Moreover, concluding that Bloomfield, Sr. and 
Knight were “involved” in developing the lot provides no certainty as to 
what Bloomfield, Sr. actually told Berry his relationship was with Knight.  
In fact, subdivision developers are always “involved” with both builders and 
home buyers to the extent the sales of lots are in conjunction with builders, 
home buyers, or both, but this does not make them joint entrepreneurs.  
Therefore, the trial court did not abuse its discretion when it struck the 
affidavit.  We overrule Seaway’s second issue challenging the trial 
court’s order striking Berry’s affidavit.
B. Bloomfield, Sr.’s Duty to Use Ordinary Care to 
Keep the Lot Safe
        Turning 
from Bloomfield, Sr.’s liability through Knight and Walcott, we must now 
determine if Seaway presented some probative summary judgment evidence that 
Bloomfield, Sr. personally breached his duty as a landowner.  As a 
landowner, Bloomfield, Sr.’s only duty was to use reasonable care in keeping 
his land in a safe condition.  See Redinger v. Living, Inc., 689 
S.W.2d 415, 417 (Tex. 1985).  This duty to keep the premises in a safe 
condition subjects a landowner to direct liability for negligence in two 
situations: (1) those arising from a premises defect and (2) those arising from 
an activity or instrumentality on the land.  Id.  Whether a 
duty exists is a question of law for the court to decide based on the facts and 
circumstances.  Golden Spread Council, Inc. #562 of the Boy Scouts of 
Am. & Boy Scouts of Am. v. Akins, 926 S.W.2d 287, 289 (Tex. 1996).
        In 
its response to Bloomfield, Sr.’s no-evidence summary judgment, Seaway claims 
Bloomfield, Sr. is liable under both situations.  However, in its appellate 
brief, Seaway asserts that its negligence claim was not based on premises 
defects and that this is not a premises-defect case with respect to Bloomfield, 
Sr.’s actions or omissions.  Instead, Seaway argues that the holding in Phillips 
Pipeline Co. v. Razo, 420 S.W.2d 691 (Tex. 1967), places a duty on 
Bloomfield, Sr. arising from “his activities on the [l]ot.”
        In 
Phillips, an employee of an excavator was injured when a bulldozer 
operated by his employer hit and ruptured a buried pipeline.  Id. at 
692.  The injured employee brought a lawsuit against Phillips, the pipeline 
operator, for its negligence in failing to properly inspect and warn of the 
presence of the pipeline.  Id.  The Texas Supreme Court held 
that a person excavating or digging up the surface owes a initial duty to make a 
reasonable effort to determine the location of known pipelines in order to avoid 
contact with them.  Id. at 694-96.  The court concluded that 
Phillips’s duty to prevent contact between its pipeline and heavy construction 
equipment by marking or giving warning of the pipeline only would arise only if 
it were once it is notified that an extraordinary or damaging use would be made 
of the surface near its pipeline.  Id. at 695-96.  Here, Seaway 
presented evidence showing Bloomfield, Sr. was aware of the pipeline, but it 
failed to present evidence showing that Bloomfield, Sr. was aware of Knight’s 
or Walcott’s activities on the surface which resulted in the rupture.  
Therefore, Seaway failed to present evidence raising a genuine issue of material 
fact that Bloomfield, Sr. did anything on the lot that created a duty under Phillips.  
See id.  After considering the foregoing and concluding that Seaway 
withdrew its earlier claim of a premises defect, Seaway failed to present 
evidence raising a genuine issue of material fact regarding its claims of 
negligence against Bloomfield, Sr. as a landowner.  Therefore, having 
determined that there was no evidence of a relationship between Bloomfield, Sr. 
and Knight, or that Bloomfield, Sr. breached his duty to keep the lot safe, we 
overrule Seaway’s first issue in regard to its negligence claims.
II. NEGLIGENCE PER SE
        In 
order to maintain its negligence per se claim against Bloomfield, Sr., Seaway 
was required to bring forward some probative evidence that raised a genuine 
issue of material fact on whether Bloomfield, Sr. breached a duty imposed by 
section 251.151 of the Texas Utilities Code.  See Tex. R. Civ. P. 166a(i).  Section 
251.151 provides as follows:
  
[A] person who intends to excavate shall notify a notification center not 
earlier than the 14th day before the date the excavation is to begin or later 
that the 48th hour before the time the excavation is to begin, excluding 
Saturdays, Sundays, and legal holidays.
 
TEX. UTIL. CODE ANN. § 
251.151(a).  Seaway argues section 251.151 imposed a duty on Bloomfield, 
Sr. to notify Seaway that he or Knight and Walcott intended to conduct 
excavation work on the lot and that Bloomfield, Sr.’s unexcused violation of 
the statute constituted negligence per se.
        In 
support of its contentions, Seaway points to the deposition testimony of Walcott 
and Knight.  In Walcott’s deposition, he testified that he was unaware 
that the pipeline existed and in his previous dealings with Knight, he relied on 
Knight to notify him of any pipelines or underground utilities.  Similarly, 
Knight testified that it was normally his responsibility to call and locate the 
pipeline and utilities on the property and then to inform Walcott of their 
location.[12]
        However, 
Seaway failed to present evidence that Bloomfield, Sr. knew of the excavation or 
gave anyone permission to conduct the excavation, or, as previously discussed, 
that a joint enterprise existed or that Walcott was his agent, employee, or 
independent contractor.  As a result, there is no evidence raising a 
genuine issue of material fact that Bloomfield, Sr. breached a duty imposed on 
him by section 251.151.  See Impson v. Structural Metals, Inc., 487 
S.W.2d 694, 696 (Tex. 1972) (stating that a person’s violation of a statute is 
not negligence per se if he neither knows nor should know of the occasion for 
compliance with the statute).  Accordingly, in regard to Seaway’s 
negligence per se claim, we overrule its first issue.
III. TEXAS SOLID WASTE DISPOSAL ACT
        In 
order to maintain its SWDA claim against Bloomfield, Sr., Seaway was required to 
bring forward some probative evidence that raised a genuine issue of material 
fact on whether Bloomfield, Sr. is a person responsible for solid waste under 
the SWDA.  See Tex. Health 
& Safety Code Ann. §§ 361.271, 361.344; Moore, 981 S.W.2d at 
269.  The only evidence that Seaway offered was Bloomfield, Sr.’s 
deposition testimony that he owned the lot at the time of the gasoline pipeline 
rupture and that he still owns the lot.
        Under 
the SWDA, a person is responsible for solid waste if the person is an owner or 
operator of a “solid waste facility.”  Tex. Health & Safety Code Ann. § 
361.271(a)(1).  “Solid waste facility” is defined to include all 
contiguous land, including all structures, appurtenances, and other 
improvements, “used for processing, storing, or disposing of solid 
waste.”  Id. § 361.003(36).  “Processing” includes 
“the transfer” of solid waste “for reuse or disposal.”  Id. 
§ 361.003(25).  “Disposing” is not defined in the statute; however, 
“disposal” is defined as the discharging, depositing, injecting, dumping, 
spilling, leaking, or placing of solid waste or hazardous waste.  Id. 
§ 361.003(7).
        Beyond 
the statutory definitions, the Texas courts that have dealt with the SWDA have 
not fully addressed who qualifies as a person responsible for solid waste.  
R.R. St. & Co., Inc. v. Pilgrim Enters. Inc., 81 S.W.3d 276, 290 
(Tex. App.—Houston [1st Dist.] 2001, no pet.); Compton v. Texaco, Inc., 
42 S.W.3d 354, 360 (Tex. App.—Houston [14th Dist.] 2001, pet. denied).  
Therefore, this is an issue of first impression. In construing the SWDA, our 
objective is to determine and give effect to the intent of the 
legislature.  Liberty Mut. Ins. Co. v. Garrison Contractors, Inc., 
966 S.W.2d 482, 484 (Tex. 1998); R.R. St., 81 S.W.3d at 288.  In 
doing so, we begin with the statute's plain language because we assume that the 
legislature tried to say what it meant and, thus, that its words are the surest 
guide to its intent.  Fitzgerald v. Advanced Spine Fixation Sys., Inc., 
996 S.W.2d 864, 865-66 (Tex. 1999).  We also consider the entire act, its 
nature and object, and the consequences that would follow from each 
construction.  See Atascosa County v. Atascosa County Appraisal Dist., 
990 S.W.2d 255, 258 (Tex. 1999).  We presume the legislature intended a 
just and reasonable result in enacting a statute.  In re D.R.L.M., 
84 S.W.3d 281, 290 (Tex. App.—Fort Worth 2002, pet. denied).
        Here, 
Seaway failed to raise a genuine issue of material fact regarding whether 
Bloomfield, Sr. owned or operated any land used for processing, storing, or 
disposing of solid waste.  While Seaway points to evidence showing that the 
ruptured pipeline ran through Bloomfield, Sr.’s subdivided lot, Seaway failed 
to present any evidence showing how Bloomfield, Sr. was liable under the SWDA 
when Seaway owned the pipeline and the easement on which it is buried.  
Moreover, it is unfathomable that the legislature intended every residential 
landowner in Texas who has a pipeline easement running underneath their property 
to be considered an owner and operator of a “solid waste facility.”  
Accordingly, in regard to Seaway’s claim under the SWDA, we overrule its first 
issue.

ALEDO’S AND CHAMBERS/ANNETTA’S
SUMMARY JUDGMENT MOTIONS
        In 
its petition, Seaway claimed that the “developers,” Aledo, Chambers, and 
Annetta (“Aledo/Chambers/Annetta”) breached the following duties: (1) 
platting the lot so that the pipeline was not situated in the front of the lot, 
(2) failing to accurately locate the pipeline easement on the recorded plat of 
the subdivision, (3) publicizing a sales map without reference to or otherwise 
indicating the existence of the pipeline, and (4) failing to warn those that 
purchased and planned to build on the lot of the existence, location, and depth 
of the pipeline.[13]  Aledo/Chambers/Annetta’s 
summary judgment motions asserted both traditional and no-evidence 
grounds.  In their traditional grounds, they asserted that their summary 
judgment evidence negated the negligence elements of duty and causation.  
Chambers/Annetta’s traditional grounds also attempted to negate gross 
negligence.  As a result of their no-evidence motion, 
Aledo/Chambers/Annetta required Seaway to raise a genuine issue of material fact 
as to the negligence elements of duty and causation, as well as the gross 
negligence element of malice.  The trial court granted both motions without 
specifying the ground upon which its judgment was based.  Because we find 
it dispositive, we focus our analysis on whether Seaway produced sufficient 
summary judgment evidence that raised a genuine issue of material fact as to 
causation.
I. PROXIMATE CAUSE
        To 
prevail on a negligence claim, a plaintiff must prove that the defendant’s act 
or failure to act was a proximate cause of the plaintiff’s injury.  First 
Assembly of God, Inc. v. Tex. Util. Elec. Co., 52 S.W.3d 482, 491 (Tex. 
App.—Dallas 2001, no pet.).  There are two elements of proximate cause: 
cause-in-fact and foreseeability.  Id. at 493.  
“Cause-in-fact” means the act or omission was a substantial factor in 
producing the injury and, without it, the harm would not have occurred.  Id.  
“Foreseeability” means the actor, as a person of ordinary intelligence, 
should have anticipated the danger to others created by his act.  Id.
A. Platting the Lot
        First, 
Seaway claims that the “developers” caused the rupture by platting the lot 
so that the pipeline crossed the front of the lot.  In support of this 
assertion, Seaway’s answers conclude, “[h]ad the subdivision been platted in 
a reasonable and prudent manner so as to have the [p]ipeline pass through a 
green space or the rear or side of the lots, this incident would not have 
occurred.”  In other words, Seaway claims that “but for” the lot 
being platted so that the pipeline was under the front yard, the rupture would 
not have occurred.  In support of its conclusion, Seaway cites to several 
pages of the deposition testimony of Coy Garrett, Seaway’s expert.  
Additionally, Seaway concludes that “the evidence also establish[ed] that 
damages caused by [the developers’] negligence were foreseeable,” again 
citing to Garrett’s deposition testimony.
        Having 
reviewed those sections of Garrett’s testimony, we conclude that Seaway has 
failed to present evidence raising a genuine issue of material fact that (1) the 
developers’ platting of the lot so that the pipeline ran under the front of 
the lot as opposed to the back or sides was a proximate cause of the rupture or 
(2) the developers could have foreseen the rupture.  The closest Seaway 
came to cause-in-fact testimony was when Garrett testified, based on his rough 
sketches of the development with the pipeline on the sides or back of the lots, 
that had Walcott dug a hole in “the front” of the lots as he testified they 
should have been configured, Walcott would not have hit the pipeline.  
However, Garrett’s testimony assumes that Walcott would have dug in “the 
front” of the lot no matter which part of the lot “the front” was. 
Furthermore, there is no evidence why Walcott decided to dig in the front part 
of the lot, and there is no evidence that he would have dug in the same location 
if the lot had been configured differently.  Therefore, Garrett’s 
assumption is not a reasonable inference from the evidence and does not 
constitute competent summary judgment evidence.  See Tex. R. Evid. 703, 705(c).  
Accordingly, there is no evidence showing that but for the developers platting 
the pipeline in the front of the lot, Walcott would not have hit the pipeline.
        In 
regard to foreseeability, Garrett testified that it was reasonably foreseeable 
for Walcott or someone like him to dig in the front of the lot.  However, 
Seaway was required to raise some evidence that the harm was foreseeable, not 
simply that the act that led to the harm was forseeable.  See First 
Assembly of God, 52 S.W.3d at 491.  While there is evidence that the 
developers could have foreseen construction activities taking place in the front 
of the lot where the pipeline was located, Seaway offered no evidence that the 
developers could have foreseen that Walcott would bury rocks in the front of the 
lot, ignore the pipeline markers, and violate the statutory mandate to call the 
one-call number in order to determine the pipeline’s location before 
digging.  Accordingly, there is no evidence showing that the developers 
could have foreseen the rupture.
B. Failing to Locate the Pipeline Easement on the 
Recorded Plat
        Next, 
Seaway asserts that the developers caused the rupture by failing to accurately 
locate the pipeline easement on the recorded plat.  However, Seaway failed 
to present any evidence that Knight or Walcott relied on the plat to locate the 
pipeline easement.  Therefore, Seaway has presented no evidence of a 
cause-in-fact between the alleged error on the plat and the pipeline rupture.
C. Publicizing a Sales Map Without Referencing the 
Pipeline Easement
        Finally, 
Seaway alleged that the developers caused the rupture by publicizing a sales map 
to all potential purchasers without referring to or otherwise indicating the 
existence of the pipeline.  In support of this argument, Seaway points to 
summary judgment evidence showing that (1) the McWeeneys gave a sales map to 
Charles Wilkes, a residential designer hired by the McWeeneys; (2) Wilkes used 
the sales map to draft a site plan; and (3) Knight eventually gave the site plan 
to Walcott.[14]  In other words, Seaway argues 
that but for the sales map omitting the pipeline, Wilkes would have included the 
pipeline in the site map and Walcott would have been aware of the pipe.  
However, Seaway fails to present any evidence that the sales map Wilkes used to 
draft the site plan was the sales map for the lot at issue (lot 26).  In 
fact, the evidence show just the opposite; the sales map the McWeeneys gave 
Wilkes and on which he based his site plan was for a different lot (lot 29) that 
did not have a pipeline easement.  Accordingly, Seaway has presented no 
evidence of a cause-in-fact between the omission of the pipeline on the sales 
map and the pipeline rupture.
        Having 
concluded that Seaway failed to present sufficient evidence raising a genuine 
issue of material fact as to each of its negligence claims against the 
developers, we overrule Seaway’s first point in regard to its negligence 
claims against the developers.
II. GROSS NEGLIGENCE
        In 
their summary judgment motions, the developers claim that there is no evidence 
that they acted maliciously.  However, it is unnecessary to determine if 
Seaway presented some evidence raising a genuine issue as to malice because we 
have held that it failed to provide some evidence of negligence; thus, Seaway is 
not entitled to recover damages for gross negligence.  See Trevino v. 
Lighting Laydown, Inc., 782 S.W.2d 946, 949-50 (Tex. App.—Austin 1990, 
writ denied) (holding that one’s conduct cannot be grossly negligent without 
being negligent); Fort Worth Hotel Ltd. P’ship v. Enserch Corp., 977 
S.W.2d 746, 752 (Tex. App.—Fort Worth 1998, no pet.) (citing Trevino 
for same).  Accordingly, in regard to Seaway’s gross negligence claims 
against the developers, we overrule its first issue.
CONCLUSION
        Having 
overruled Seaway’s issues on appeal, we affirm the judgment of the trial 
court.
  
  
                                                          BOB 
MCCOY
                                                          JUSTICE
  
  
PANEL 
B:   DAUPHINOT, GARDNER, and MCCOY, JJ.
 
DELIVERED: 
December 2, 2004


NOTES
1.  
Hanley owns Aledo.  Primarily, Aledo’s work consisted of building the 
roads and water, sewer, and utility lines in the subdivision.
2.  
Seaway owns the pipeline and the easement on which it is buried, and ARCO 
Pipeline Company (“ARCO”), who is not a party on appeal, operates the 
pipeline.
3.  
Tex. Util. Code Ann. § 251.151 
(Vernon Supp. 2004-05).
4.  
To the extent Seaway claimed that Hanley, Aledo, Chambers, and Annetta were 
liable under the Texas Health and Safety Code, Seaway does not contest any 
summary judgment granted as to such claims.
5.  
Seaway advances its second issue conditionally, stating “the [c]ourt may not 
need to reach and decide whether this was error because Bloomfield never 
challenged Seaway to produce evidence upon Bloomfield’s joint enterprise with 
Knight.  If the issue must be reached, it was error to strike 
Bloomfield’s admission.”
6.  
See Tex. Health & Safety Code 
Ann. § 361.344.
7.  
Seaway also argues that because Bloomfield, Sr. attached and referred to summary 
judgment evidence, his no-evidence motion should be treated as a traditional 
motion or the evidence should simply be ignored.  In accordance with the 
instructions of the Texas Supreme Court, we will simply ignore the 
evidence.  See Binur v. Jacobo, 135 S.W.3d 646, 650 (Tex. 2004) 
(stating that a no-evidence summary judgment which attaches summary judgment 
evidence should not be treated as a traditional summary judgment motion).
8.  
Additionally, Bloomfield, Sr.’s no-evidence summary judgment motion was 
sufficient to challenge Seaway’s claims of negligence committed by Bloomfield, 
Sr., as well as those claims that could be imputed to him by the actions of 
Knight or Walcott.  See Tex. 
R. Civ. P. 166a(I).
9.  
Tex. Util. Code Ann. § 251.151.
10.  
In its answer to Bloomfield, Sr.’s no-evidence summary judgment, Seaway also 
asserts that Walcott was an agent and employee of Bloomfield, Sr.  However, 
Seaway fails to address this issue in its brief. In the interest of justice, we 
will briefly discuss the merits of the summary judgment as to that issue.  
Under the agency theory, “the right to control” test is typically applied. Royal 
Mortgage Corp. v. Montague, 41 S.W.3d 721, 733 (Tex. App.—Fort Worth 2001, 
no pet.).  Under this test, the court examines whether the alleged 
principal (Bloomfield, Sr.) had the right to determine the details of the 
agent’s (Walcott’s) work.  See id.  It is the extent of the 
principal’s control over the details of accomplishing the assigned task that 
primarily distinguishes that status of independent contractor from agent.  See 
id.  Here, Seaway failed to present any evidence that Bloomfield, Sr. 
even knew who Walcott was, much less had the right to direct his work.  
Moreover, Seaway failed to present any evidence that would raise a genuine issue 
of material fact as to an independent contractor relationship between 
Bloomfield, Sr. and Walcott. See Pitchfork Land & Cattle Co. v. King, 
162 Tex. 331, 346 S.W.2d 598, 602-03 (1961).  Therefore, Seaway presented 
no evidence that Walcott was an agent, employee, or independent contractor of 
Bloomfield, Sr.
11.  
In addition to this deposition testimony, Seaway points to the affidavit of 
Berry, which the trial court later stuck pursuant to Bloomfield, Sr.’s 
objection.  In the following section, we discuss Seaway’s second issue 
challenging the trial court’s decision to strike the affidavit.
12.  
Seaway also contends, without citing to the record, that Bloomfield, Sr.’s 
deposition testimony establishes that he also failed to notify Seaway and/or 
ARCO of the excavation.  However, Bloomfield, Sr.’s deposition testimony 
reflects that (1) he was in the Phillippines when the accident occurred, (2) he 
had not given anyone permission to conduct activities on his land, (3) he was 
not a part of Knight’s business and therefore not aware that Knight had been 
hired by prospective buyers to build a house on the lot subsequent to the 
closing, (4) Walcott, whom he did not know, was a trespasser who entered onto 
Bloomfield, Sr.’s land without his permission, and (5) Walcott was not in the 
performance of any duties for Bloomfield, Sr.
13.  
At oral argument, Seaway conceded that it no longer pursued its claim regarding 
the developers’ failure to warn.
14.  
According to Wilkes’s deposition testimony, a site plan is not used for 
building purposes, but is a preliminary document used by builders solely to 
price the cost of constructing a new home and provide their clients with an 
intelligent budget.