**TEXAS DEPARTMENT OF TRANSPORTATION,**
Appellant,

v.

Luke W. ABLE; Ben Dees and George Hans Knoll, Coexecutors of the Estate of Margaret Able, Deceased; Ramona Lee Dees; and Sylvia Jane Knoll, Appellees.

No. 01–96–01471–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Sept. 17, 1998.

Rehearing Overruled Dec. 21, 1998.

Charles M. Ratliff, Houston, for appellant.

David L. Monroe, Houston, for appellees.

Before MIRABAL, TAFT and EVANS,* JJ.

## OPINION

FRANK G. EVANS, Justice (Retired).

The principle issue in this case is whether a state agency, the Texas Department of Transportation ("TxDot") is liable under the Texas Tort Claims Act for the negligence of an employee of another public entity, the Metropolitan Transit Authority ("Metro"), by virtue of having engaged in a joint enterprise with Metro for the operation and maintenance of a public transportation system. We conclude that TxDot is legally liable and accordingly affirm the judgment.

### The Transitways Agreement

In 1988, Metro and TxDot entered into a Transitways Agreement for the operation and maintenance of a contemplated system of transitways (the Transitways System) along TxDot's freeways lying within Metro's jurisdiction. The stated purpose of this agreement is to enable the parties to "accomplish uniformity and coordination" in relation to the safe and effective operation and maintenance of the Transitways System and to specify their respective rights and obligations for the operation and maintenance of that system.

The Transitways System includes certain high occupancy vehicle ("HOV") lanes, which are typically 19.5–feet wide, reversible, one-lane roadways located between the freeway traffic lanes. Each HOV lane is separated from the adjacent freeway traffic lanes by concrete barriers.

---

* The Honorable Frank G. Evans, retired Chief Justice, Court of Appeals, First District of Texas at Houston, participating by assignment.

## The Accident

In 1993, Dr. Luke W. Able, driving a mini-van with his wife, Margaret Able, as his passenger, was traveling outbound from Houston in a westerly direction along the Highway 290 HOV lane when he encountered a pickup truck driven by Jerry Huebner, which was going the wrong way along the HOV lane. Dr. Able was unable to avoid a head-on collision with Huebner's pickup, and both Margaret Able and Huebner's passenger were killed in the accident.

## The Litigation: Verdict and Judgment

Dr. Able, the executors of Margaret Able's estate (Ben Dees and George Hans Knoll), and Margaret Able's survivors (Ramona Lee Dees and Sylvia Jane Knoll), brought this action against TxDot, Metro, Harris County, and the City of Houston, but nonsuited Harris County before trial. A jury found that Huebner, who was not a defendant, and Metro each were 50 percent negligent and that Metro was grossly negligent with respect to the condition of the transitway system premises. The jury further found TxDot was not negligent, but that Metro and TxDot were engaged in a joint enterprise. The jury awarded $1,000,000 in damages to Dr. Able, $750,000 to Ramona Dees, $750,000 to Sylvia Jane Knoll, and $200,000 to the estate of Margaret Able. Based on the negligence finding as to Metro and the finding of joint enterprise as to Metro and TxDot, the trial court rendered judgment against TxDot for the statutory maximum amounts of $250,000 in favor of Dr. Able and $250,000 jointly to the estate of Margaret Able, Ramona Dees, and Sylvia Jane Knoll. TxDot appeals from that judgment, asserting three points of error. The trial court rendered judgment against Metro for a total of $200,000 and a take-nothing judgment as to Harris County and the City of Houston.

## Point of Error One

### Immunity and the Texas Tort Claims Act

TxDot first contends that it did not waive its sovereign immunity as a state agency and that the trial court erred in rendering a judgment against it based solely on the negligence finding as to Metro. TxDot argues that because the Texas Tort Claims Act[1] ("the Act") does not specifically provide that a governmental entity may be held legally responsible for the negligence of another party, the trial court erred as a matter of law in holding TxDot liable for Metro's negligence.

■ Generally, units of government are immune from liability for negligence in the performance of governmental functions, except to the extent such immunity has been waived by the Act. *Woomer v. City of Galveston,* 765 S.W.2d 836, 838 (Tex.App.—Houston [1st Dist .] 1988, writ denied). Section 101.021 of the Act provides:

A governmental unit in the state is liable for:

(1) property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment if:

(A) the property damage, personal injury, or death arises from the operation or use of a motor-driven vehicle or motor-driven equipment; and

(B) the employee would be personally liable to the claimant according to Texas law; and

(2) personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law.

TEX.CIV.PRAC. & REM.CODE ANN. § 101.021 (Vernon 1997).

■ Section 101.021 thus waives governmental immunity from liability when property damage, personal injury, or death are proximately caused by an employee's negligence (acting within the scope of employment) if the accident arises from (1) the use or operation of a motor-driven vehicle or equipment and (2) the employee would be personally liable under Texas law. This section also waives governmental immunity from

---

1. TEX.CIV.PRAC. & REM.CODE ANN. §§ 101.001–.109 (Vernon 1997 & Supp.1998).

liability in the event of personal injury or death from some use or condition of real property, *i.e.,* a "premises defect," or from some use or condition of tangible personal property.

The Act limits the duty owed by the governmental entity if the claim is based on a premise defect. Section 101.022(a) provides that, unless the claimant has paid for the use of the premises, the governmental unit owes the claimant only such duty as a private person would owe a licensee on private property. TEX.CIV.PRAC. & REM.CODE ANN. § 101.022(a) (Vernon 1997). This limitation of duty, however, does not apply to "special defects," and under section 101.022(b), it is the public entity's duty to warn of special defects such as excavations or obstructions on highways and roads, and regarding the absence, condition, or malfunction of traffic signs, signals, or warning devices as is required by section 101.060. TEX.CIV.PRAC. & REM.CODE ANN. § 101.022(b) (Vernon 1997).

 TxDot contends that the Act limits its liability to the negligence of its own employees and that it could never be held responsible under the Act for the negligence of an employee of another entity. We see nothing in the Act to support TxDot's argument, and the language of section 101.021(2) seems to negate any such legislative purpose. Thus, we hold that the Act does not limit TxDot's liability to the negligence of its own employees and that, under appropriate circumstances, it could be liable for the negligence of an employee of a coventurer under the doctrine of joint enterprise.

 To establish TxDot's waiver of immunity from liability, it was incumbent upon the appellees to show that under Texas law, TxDot would, if a private corporation, be legally liable to them for Metro's negligence under the doctrine of joint enterprise. TEX. CIV .PRAC. & REM.CODE ANN. § 101.021(2) (Vernon 1997); *see also Smith v. University of Tex.,* 664 S.W.2d 180, 190 (Tex.App.— Austin 1984, writ ref'd n.r.e.). Thus, to determine whether such liability exits, we examine the appellees's pleadings and proof of a joint enterprise between TxDot and Metro regarding the operation and maintenance of the Transitways System.

### The Appellees's Pleadings

In their amended petition, the appellees pleaded that TxDot, Metro, Harris County, and the City of Houston were jointly and severally liable for the maintenance of premise defects at the entrance of the HOV lanes and that the defendants had violated the duty imposed on them by section 101.022(a) of the Act. Under these pleadings, the appellees were entitled to offer proof that TxDot and Metro were engaged in a joint enterprise and that by virtue of such relationship, TxDot would, if a private corporation, be liable under Texas law to third persons who had suffered personal injury or death due to the negligence of a coventurer in the joint enterprise.

### The Nature of Joint Enterprise

 Under Texas law, a joint enterprise, as that term is used in the law of negligence, signifies a legal relationship between two or more parties that imposes the responsibility upon each joint adventurer for the negligent acts of the other while acting in furtherance of their common undertaking. *See Shoemaker v. Estate of Whistler,* 513 S.W.2d 10, 14 (Tex.1974). There are four basic elements required to establish a joint enterprise: (1) an agreement among the members of the group; (2) a common purpose; (3) a community of pecuniary interest; and (4) an equal right to control the enterprise. *Blount v. Bordens, Inc.,* 910 S.W.2d 931, 933 (Tex.1995); *Shoemaker,* 513 S.W.2d at 16–17. Specifically, TxDot challenges the legal and factual sufficiency of the evidence to prove the elements of "community of pecuniary interest" and an "equal right to control the enterprise." Describing the Transitways Agreement as a "cooperative venture of two governmental agencies, a sharing of resources to provide the public good," TxDot contends there was "no financial interest at stake" and no sharing of either profits or losses.

### Joint Enterprise Agreement

At trial, the appellees offered various documents, including the Transitways Agreement,

to prove the relationship between TxDot and Metro. As noted earlier, the Transitways Agreement recited the parties's "desire" to accomplish "uniformity and coordination" in relation to the operation and maintenance of the contemplated system of transitways, it specified the parties's respective "rights and obligations" regarding the operation and maintenance of the transitways along TxDot's freeways within Metro's jurisdiction, and it declared the parties's mutual intent to operate the transitways "safely and effectively." Under a section entitled "Use of Facilities," the Agreement provides:

> The parties acknowledge that the highway facilities upon which Transitways are constructed are under the ultimate control and supervision of the State, however, the parties also acknowledge that the construction, operation, and maintenance of Transitways involve investment of substantial sums for mass transit purposes, by Metro and the United States Government; therefore, the State agrees that it will exercise its rights of control and supervision so as to recognize the mass transit purposes of Transitways throughout their useful lifetime.

An information letter prepared by Metro acknowledged that "From the beginning, the Transitway program has been a joint effort between Metro and the Texas Department of Transportation (TxDot)" and that Metro and TxDot each have had design responsibility for the Transitways in the various corridors. According to this letter, TxDot is responsible for the construction management of all facilities within their right-of-way, and Metro, TxDot, and other governmental entities are obligated to provide the funding for the project.

### Joint Control and Pecuniary Interest

The Transitways Agreement established a Transitway Management Team composed of a TxDot transitway engineer and a Metro transitway manager to develop rules and regulations governing the transitway, including operation manuals and reports, and provided that this team would regularly evaluate the effectiveness of transitway traffic control devices in achieving the goals set forth in the Agreement and recommend such changes as were necessary to effectuate such goals. Pursuant to this contractual provision, TxDot and Metro prepared an Operations Plan and Operations Manual to control the operation of the 290 HOV lane, and this Operations Plan provided that Metro would operate the Transitway during specified times and provide the personnel and equipment required to safely and efficiently open, close, and operate the HOV lanes. The Plan also states that the maintenance responsibility for the Transitway was shared by Metro and TxDot.

### Jury's Findings

The jury could reasonably have inferred from the contract documents that TxDot and Metro were engaged in a joint enterprise for the operation and maintenance of the Transitway System, and that pursuant to their Transitway Agreement, each governmental entity had agreed to contribute certain things of value such as funding, operational, and maintenance services to assure the success of the joint enterprise. Based on the contract documents, the jury could also have decided that each party to the Transitway Agreement retained an equal right to control the design, operation, and maintenance of the Transitway System, even though one party or the other was required to assume specific duties regarding the operation and maintenance of the Transitway System.

Further, the jury could also have concluded from the contract documents that each party had a definite pecuniary interest that motivated their participation in the enterprise. The jury could reasonably have assumed from the contract documents that the parties had crafted the Transitways Agreement to avoid duplication of effort and to reduce each party's operational and maintenance costs. Contrary to TxDot's assertions, the elements required to establish a joint enterprise, as distinguished from a joint venture, do not require proof of the sharing of profits and losses. *See Shoemaker*, 513 S.W.2d at 16–17.

We hold there is legally and factually sufficient evidence to support the jury's findings of a joint enterprise and that the trial court

did not err in rendering judgment on the jury's verdict.

We accordingly overrule TxDot's first point of error.

## Point of Error Two

### Exclusion of Prior Inconsistent Statements

■ In its second point of error, TxDot contends the trial court erred in refusing to admit into evidence Jerry Huebner's prior inconsistent statement concerning how he happened to enter the HOV lane from the wrong direction.

### Huebner's Statements

On the night of the accident, a Harris County deputy sheriff spoke with Huebner at the hospital, and based on that interview, the officer filed a supplemental report of the accident. In that report, the officer stated that during his first interview Huebner did not remember ever being on the HOV lane, but during the later interview, he remembered getting on the HOV lane at Pinemont heading outbound (in a westerly direction) and then getting off the freeway at West Little York and turning into a Park–n–Ride location. Huebner then told the officer he remembered driving around the parking lot until he approached a closed gate with a red light, and as he drove closer to the gate, the light turned green and the gate opened. He then drove through the gate and turned right onto the Highway 290 feeder road heading toward Pinemont, and he never got back onto the HOV lane. Two weeks after the accident, Huebner gave another statement to the police saying that he could not recall how he got onto the HOV lane, and he gave similar testimony at his first deposition in these proceedings. Shortly before trial, Huebner gave a second deposition in which he testified he had recently remembered driving through an open gate onto the HOV lane.

### TxDot's Contentions

TxDot claims it was error for the trial court to exclude Huebner's statements to the deputy sheriff, arguing, first, that Huebner's statements were admissible as prior inconsis-

tent statements; second, that the statements were admissible to rebut the opinion testimony of Dr. Able concerning Huebner's memory loss; and, third, that the statements were admissible as public records and reports under Texas Rule of Evidence 803(8).

### Harmless Error

■ We do not address the admissibility of the statements in question because we do not hold that the exclusion of such statements constitutes reversible error. The admission or exclusion of evidence is committed to the trial court's sound discretion. *City of Brownsville v. Alvarado,* 897 S.W.2d 750, 753 (Tex.1995). To establish that the trial court's ruling on the admission or exclusion of evidence constitutes reversible error, the party complaining of the ruling must show (1) that the trial court committed error and (2) that the error was reasonably calculated to cause and probably did cause the rendition of an improper judgment. Tex.R.App.P. 44.1(a)(1); *McCraw v. Maris,* 828 S.W.2d 756, 757 (Tex. 1992).

Here, we conclude that the trial court's ruling, if error, did not constitute reversible error, because the substance of the excluded statements was placed before the jury by other testimony. During TxDot's cross-examination of Dr. Olin Dart, the appellees's consulting-expert traffic engineer, the following exchange occurred:

Q. One of the possibilities that you considered, Doctor, did you consider the possibility that Jerry could have initially gone outbound from Pinemont to West Little York and then turned around and come back inbound?

A. That was in one of his statements, I believe, that's correct.

. . . .

Q. So one possibility is he went outbound from Pinemont to West Little York and then came back inbound; is that correct?

A. That would be a possibility

R. Within a matter of a few minutes?

A. That would be possible.

. . . .

Q. Okay. And if Jerry Huebner, in fact, was going both ways on this HOV lane within a matter of minutes, there was no excuse for him having done that, is there, Doctor?

[Objection omitted]

Q. (By Mr. Garza) If, in fact, he did that?

A. If, in fact, he did that. You would think that he would have understood that.

Q. There would be no excuse for him having done that, would there?

A. That's correct.

. . . .

Q. Let's go through some of this evidence that we've discussed today, Doctor. Although, as you tell us today, you have no more idea about how Jerry got on that HOV going the wrong way than anyone else, do you?

A. That's right.

Q. Even after reading [sic] Jerry's so called sworn testimony about how he now claims it happened, right?

A. He claims he went through the gate.

Q. Yes, sir. That's what he claims, right?

A. That's right.

Q. And he has given inconsistent stories at different times, hasn't he?

A. Apparently.

Q. Yes, sir. One of which has included an admission that he went both ways on an HOV lane within a few minutes?

Thus, even though the exclusion of Huebner's prior statements may have been error, we hold that the trial court's ruling was harmless and did not cause the rendition of an improper judgment. TEX.R.APP .P. 44.1.

We accordingly overrule point of error two.

### Point of Error Three

### Error in Damage Award

At oral argument before this Court, TxDot announced it would waive its third point of error complaining of the trial court's award of damages. Thus, we do not address the arguments made under that point.

### Conclusion

Because we have overruled TxDot's first and second points of error, we need not address Dr. Ables's cross-points that complain of the trial court's rulings regarding the matters discussed under such points.

We affirm the judgment.